No. 82-362

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

FIRST AMERICAN INSURANCE AGENCY,

                    Plaintiff and Appellant,

        vs.

CAROL L. GOULD,

                    Defendant and Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
              In and for the County of Cascade
              Honorable John McCarvel, Judge presiding.

Counsel of Record:

        For Appellant:

        James, Gray and McCafferty, Great Falls, Montana

        For Respondent:

        Church, Harris, Johnson & Williams, Great Falls, Montana

---

                        Submitted on briefs: January 27, 1983

                                Decided:  March 24, 1983

Filed: MAR 24 1983

Ethel M. Harrison
_____
                    Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

First American Insurance Agency appeals from two orders entered in the District Court of the Eighth Judicial District, Cascade County. The first order dissolved a temporary restraining order which enjoined Carol L. Gould from engaging in her insurance business in the Great Falls area. The second order awarded attorneys' fees to Carol Gould.

Carol L. Gould was initially employed in 1973 as a clerical worker for the Yeoman Insurance Agency of Great Falls, Montana. First American Insurance Agency acquired that agency on March 1, 1977. Carol continued as a clerical worker. At the urging of her employer, Carol took the licensing exam and began selling insurance in January of 1979. She was assigned a book of business customers to service in exchange for a guaranteed salary. The list of customers consisted primarily of people she knew and with whom she had already had substantial contact.

On February 16, 1981, Carol signed an employment contract with First American. The contract provided for a $7,000 a year increase in salary. It contained the following pertinent clause:

> "8. In the event of termination of this contract, the Employee agrees that he will not engage directly or indirectly, either personally or as an employee, associate, partner, manager, agent or otherwise, or by means of any corporate or other legal entity or device, in the same business as that of the Employer, or in any casualty insurance sales business, or occupation, or in any way compete with the Employer, or the Employer's successor, if any, within the City of Great Falls, Montana, or within a radius of twenty-five (25) miles from the City of Great Falls, Cascade County, Montana, for a period of ten (10) years from the date of such termination. The Employee agrees that in consideration for his continued employment with the Employer, this provision shall be deemed renewed as of January 1 of each year hereafter, for

2

so long as he remains in the employ of the Employer. The Employee acknowledges that because of this employment and the nature thereof, he will be given and will have access to information as to renewal dates of insurance policies and as to prospective customers, which is usually and ordinarily kept confidential by the Employer, and the Employee acknowledges that he understands that competition with the Employer in the event of termination of this agreement, would be unfair due to the disclosure of confidences involved in the employment of this nature, and the Employee specifically further acknowledges receipt of good and valuable consideration sufficient to support the provision of this agreement and specifically further agrees that any violation or breach of this part of this contract of employment, or any part thereof, shall be a proper subject for injunctive relief in addition to any other remedy available in equity or at law. The Employee further agrees that he will not reveal any information concerning any policy or policies of insurance, or the expiration dates thereof, to any person whomsoever, except to officers of the Employer, and he will not solicit renewals of any insurance that is for any person or organization other than the Employer. The Employee further agrees that upon the termination of his employment for any cause whatsoever, he will not directly or indirectly solicit the insurance customers of the Employer, either verbally or in writing, nor will he keep in his possession a list of the customers of the Employer, nor contact the customers of the Employer in any manner, nor use the names and addresses of the customers of the Employer for solicitation by him or his agent after the termination of his employment. The Employee further agrees that upon termination of his employment for any cause whatsoever, he will surrender to the Employer in good condition, any and all records kept and maintained by him showing the names, addresses or other information with regard to the insurance customers or the conditions of this paragraph shall be a proper subject for injunctive relief in addition to any other remedies available in equity or in law."

Carol became dissatisfied with her job and terminated her employment on June 21, 1981. She opened her own insurance business in Great Falls on July 1, 1981.

First American filed a complaint against Carol in the Eighth Judicial District Court of Montana on August 6, 1981, seeking injunctive relief. Among other things, the complaint alleged Carol to be in breach of Paragraph 8 of her employment contract. Specifically, First American alleged

3

that Carol is engaged in the same business as her former employer in Great Falls and has in her possession a confidential list of First American's customers containing names, addresses and the renewal and expiration dates of policies. Further, Carol has contacted customers on that confidential list to solicit renewals on her own behalf. Other allegations in the complaint have since been resolved by the parties.

In response to the complaint, a temporary restraining order was issued August 10, 1981, ordering that Carol not engage in the insurance business in the Great Falls area nor contact or solicit insurance business with First American's customers and that Carol surrender any lists or records of First American's customers in her possession. A show cause hearing was scheduled for August 20, 1981.

Carol testified at the hearing that she had solicited approximately 91 accounts for her new insurance business. Approximately fifty percent (50%) of those prospective accounts were customers of First American. Approximately one-half of those customers had initiated contact with Carol themselves. Carol actually wrote insurance for one-third of the First American customers with whom she had been in contact.

Carol testified that she has never, since leaving First American, had any list of customer's names, addresses or insurance expiration dates. Rather, any information of that nature utilized by her in her own business came from general knowledge acquired during her employment.

Only two letters sent by Carol to prospective customers contained a reference to the expiration date of the addressee's insurance policy. One letter was to an individual who had never been a customer of First American.

4

The other letter mentioned an expiration date, but the date quoted was not correct.

First American offered no evidence at the hearing in support of its claim that Carol had taken a customer list with her when she left the agency. John Watson, Manager of First American, testified that he did not know, of his own personal knowledge, that Carol had taken any written customer information when she left the agency.

In its findings of fact, conclusions of law and order of September 10, 1981, the District Court found no evidence that Carol had any customer lists belonging to First American. Further, no privileged information was used in contacting First American's customers. The court found that Carol had "relied only upon her memory and experience, together with public information" to contact First American's customers. The provisions of the employment contract which restrict competition or prohibit Carol from contacting customers of First American were found to be void as a matter of law under section 28-2-703, MCA. Judgment was granted to Carol against First American with respect to all portions of the complaint. The matter was then continued for hearing on a motion by Carol for attorneys' fees.

That hearing was held June 3, 1982. Carol presented witnesses and exhibits in support of her claim for $2,274.00 in attorneys' fees and $2.25 in costs. First American submitted no witnesses or exhibits. Judgment granting Carol $2,276.25 was issued July 16, 1982.

First American now appeals those judgments and presents this Court with the following issues:

1. Did the District Court err in denying injunctive relief and damages to First American for Carol's use of information obtained in her employment?

5

2. Did the District Court err in the award and determination of the amount of attorneys' fees to Carol?

Because of the specific facts of this case, both judgments of the District Court are affirmed.

Section 28-2-703, MCA states:

> "Contracts in restraint of trade generally void. Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void." (Both parties have agreed that neither section 28-2-704, MCA nor section 28-2-705, MCA, is applicable to this case.)

Contracts in restraint of trade generally are covenants not to compete. Covenants not to disclose customer information can be valid but the information must be "confidential and not readily accessible to competitors." Best Dairy Farms, Inc. v. Houchen (1968), 152 Mont. 194, 199, 448 P.2d 158, 161, citing Gordon v. Schwartz (1957), 147 Cal.App.2d 213, 305 P.2d 117.

Paragraph 8 of the employment contract between Carol Gould and First American contains covenants not to compete and covenants not to disclose confidential or public information. It also contains a provision prohibiting Carol from retaining in her possession any customer records upon the termination of her employment with First American.

The covenants not to compete were correctly determined by the District Court to be unenforceable. They are covenants in restraint of trade and are therefore void under section 28-2-703, MCA.

First American had the burden of proving that the covenants not to disclose do not also violate section 28-2-703, MCA. J.T. Miller Co. v. Madel (1978), 176 Mont. 49, 53, 575 P.2d 1321, 1323. First American failed to meet that burden.

6

No evidence was presented at the hearing that Carol retained in her possession any records or lists of First American's customers upon leaving its employ. However, violations of covenants not to disclose do not require a physical taking of customer records. Such covenants can also be violated when an employee memorizes the privileged information and uses it elsewhere.

Carol testified that any knowledge of names, addresses, insurance expiration dates and other information concerning her customers was solely the result of her work experience at First American. She committed no lists to memory. In fact, she knew most of the customers before she was ever given a list.

The governing rule of law is settled. "The employee, having left his employment, is free to make use of his experience, so long as he does not violate his employer's confidence." J. T. Miller Co. v. Madel, supra at p. 55, 575 P.2d at 1324, citing King v. Pacific Vitamin Corporation (1967), 256 Cal.App.2d 841, 64 Cal.Rptr. 486.

There is substantial credible evidence to support the trial court's findings that Carol took no property from the employer nor did she violate any confidence.

The judgment of the District Court denying injunctive relief and damages to First American is affirmed.

Finally, the order granting Carol Gould attorneys' fees and costs in the amount of $2,276.25 is affirmed. We held in Marta v. Smith (1981), _____ Mont. _____, _____, 622 P.2d 1011, 1015-1016, 38 St.Rep. 28, 33, that " . . . attorney fees and costs are recoverable under section 27-19-306, MCA, as elements of the damages sustained by reason of the injunction . . ." The costs for an injunction are limited to $100.00. Section 27-19-406, MCA. Carol's costs were $2.25. The

7

attorney fees must be reasonable. Marta v. Smith, supra. Sufficient evidence was presented at the June 3, 1982, hearing to support the District Court's award of attorneys' fees as reasonable.

The judgments of the District Court are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices