**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 15, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

H. ROBERT WARREN; JOAN
CROCKER,

       Plaintiffs-Appellants,

v.

CAMPBELL FARMING
CORPORATION; STEPHANIE
GATELY; ROBERT GATELY,

       Defendants-Appellees.

No. 09-2169
(D.C. No. 6:05-CV-00441-MV-RLP)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

This case involves a closely held Montana corporation with its principal

place of business in New Mexico. During the relevant time period, three

shareholders controlled all of the shares of Campbell Farming Corporation ("the

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

company"). Defendant Stephanie Gately controlled 51% of the shares and plaintiffs H. Robert Warren and Joan Crocker controlled the remaining 49% of the shares. The company had three directors, Stephanie Gately, Warren, and the company's president, defendant Robert Gately, who is Stephanie Gately's son. The transaction that gave rise to this litigation involved a proposal by Stephanie Gately, in her capacity as a corporate director, to award a bonus in the form of company stock and cash (for a total value of $1.2 million) to her son, Robert Gately, to compensate him for past service to the company and to prevent him from resigning.

After Stephanie Gately proposed the bonus, Warren requested that it be voted on by all of the shareholders. Warren and Crocker both voted their shares against the bonus. Stephanie Gately voted all of her shares in favor of the bonus. Because she controlled a majority of the shares, the bonus was approved.

Plaintiffs ultimately filed a derivative and direct action against the company and the Gatelys in federal district court in New Mexico. They sought to void the bonus transaction by asserting claims for breach of statutory and fiduciary duties, as well as other common law claims. The district court held a bench trial and then issued findings of fact and conclusions of law supporting a decision in favor of defendants. Plaintiffs appealed from that decision.

We have jurisdiction over this diversity case under 28 U.S.C. § 1291. For the following reasons, we AFFIRM the district court's judgment.

-2-

I.

The district court determined that the bonus transaction was a director's conflict-of-interest transaction under Mont. Code Ann. § 35-1-461(2), but that the transaction could be saved by the safe-harbor provision in § 35-1-462(2)(c) because it was "fair to the corporation," *see id*. The district court also concluded that the Gatelys' actions as directors satisfied the business judgment rule. The district court further determined that the bonus transaction did not constitute a breach of fiduciary duties. Finally, the district court held that equity would support the affirmance of the bonus transaction.

Plaintiffs argued on appeal that the district court erred by: applying the safe-harbor provision to an executive bonus that lacked consideration; finding that the bonus transaction was fair; applying the business-judgment rule to a director's conflict-of-interest transaction; applying a modified rule of judicial review to the fiduciary-duty claim; and concluding that the bonus could be affirmed through the application of equitable principles. Because the appeal presented several novel and unsettled questions of state law, we certified the following three questions to the Montana Supreme Court:

> (1) Can the safe harbor provision in Mont. Code Ann. § 35-1-462(2)(c) be extended to cover a conflict-of-interest transaction involving a bonus that lacks consideration and would be void under Montana common law?

> (2) Does the business judgment rule apply to situations involving a director's conflict-of-interest transaction?

-3-

(3)  Does the holding in *Daniels v. Thomas, Dean & Hoskins, Inc.*, 804 P.2d 359, 365-67 (Mont. 1990), which appears to adopt an alternative test for evaluating whether there has been a breach of fiduciary duties by a controlling shareholder in a closely-held corporation, apply to a transaction that involves a conflict of interest?

*Warren v. Campbell Farming Corp.*, 400 F. App'x 312, 312 (10th Cir. Oct. 7, 2010) (unpublished certification order).

The Montana Supreme Court determined that (1) the bonus transaction can be reviewed under the safe-harbor provision; (2) the business-judgment rule does not apply to situations involving a director's conflict-of-interest transaction; and (3) the *Daniels* test applies to a breach-of-fiduciary claim against a controlling shareholder involving a conflict-of-interest transaction.  *See Warren v. Campbell Farming Corp.*, --- P.3d ---, 2011 WL 6888572, at *6-*8, *11 (Mont. Dec. 30, 2011).  With the guidance provided by the Montana Supreme Court, we now consider the issues raised on appeal.

## II.

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo."  *Roberts v. Printup*, 595 F.3d 1181, 1186 (10th Cir. 2010) (quotation marks omitted).  We review "mixed questions of law and fact . . . under the clearly erroneous or de novo standard, depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles."  *Id*. (quotation marks omitted).

A. Fairness of the Bonus Transaction

Plaintiffs challenge the district court's determination that the bonus transaction is subject to review under the safe-harbor provision. In its answers to the certified questions, however, the Montana Supreme Court explained that the safe-harbor provision does apply to the bonus transaction at issue in this case. Accordingly, the district court did not err in applying the safe-harbor provision to the bonus transaction.

As for the district court's determination that the bonus transaction was fair to the company, we review that determination for clear error because it is a mixed question of law and fact that involves a primarily factual inquiry. *See Printup*, 595 F.3d at 1186. "A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *S. Colo. MRI, Ltd. v. Med-Alliance, Inc.*, 166 F.3d 1094, 1099 (10th Cir. 1999) (quotation marks omitted).

The Montana Business Corporation Act ("Montana Act") is patterned after the American Bar Association's Model Business Corporation Act ("Model Act"), and therefore the Official Comments to the Model Act are instructive. *Warren*, 2011 WL 6888572, at *2. The relevant safe-harbor provision in the Montana Act is identical to that contained in the Model Act. That provision states that "[a] director's conflicting interest transaction may not be enjoined, set aside, or give

rise to an award of damages or other sanctions . . . if . . . the transaction, judged

according to the circumstances at the time of commitment, is established to have

been fair to the corporation."  Mont. Code Ann. § 35-1-462(2)(c) (2010); Model

Bus. Corp. Act § 8.61(b)(3) (2002).

> The Official Comments to the Model Act explain that:

> It has long been settled that a "fair" price is any price in that broad
> range which an unrelated party might have been willing to pay or
> willing to accept, as the case may be, . . . following a normal
> arm's-length business negotiation, in the light of the knowledge that
> would have been reasonably acquired in the course of such
> negotiations, any result within that range being "fair."  The same
> statement applies not only to price but to any other key term of the
> deal.

Model Bus. Corp. Act, Official Comment to § 8-61(b), at 8-151.  The Official

Comments further explain that:

> In considering the "fairness" of the transaction, the court will in
> addition be required to consider not only the market fairness of the
> terms of the deal, but also, as the board would have been required to
> do, whether the transaction was one that was reasonably likely to
> yield favorable results (or reduce detrimental results) from the
> perspective of furthering the corporation's business activities.

*Id*.  Finally, the Official Comments instruct that:  "In some circumstances, the

behavior of the director having the conflicting interest can itself affect the finding

and content of 'fairness.'"  *Id*. at 8-152.  "Unfair dealing" might involve a

director who fails to fully disclose his interest or a defect in the transaction or

who exerts improper pressure on the other directors.  *Id*.  "Thus, the course of

-6-

dealing–or process–is a key component to a 'fairness' determination under subsection (b)(3)." *Id*.

Here, the district court conducted its fairness review consistent with the guidance provided by the Official Comments. The district court made extensive findings of fact, *see* Aplt. App., Vol. 1 at 2-23, and concluded that "[t]he testimony and evidence at trial . . . establish that the bonus was fair to the Company, both as to fair dealing and to fair value," *id*. at 27. The court summarized its findings, noting that the process for approving the bonus was not "fraudulent or deceptive." *Id*. at 28. The court further explained that

> the stock was valued at a fair amount, the bonus was cash neutral or nearly cash neutral to the Company, the overall amount of the bonus was reasonable and resulted in R. Gately's salary being brought up to market level for the prior five years, there was minimal stock dilution for the minority shareholders, the bonus aligned R. Gately's interests with the Company, and the bonus prevented R. Gately from resigning as President.

*Id*.

The plaintiffs raise a number of different claims of error with respect to the district court's fairness determination, but the district court's findings are supported by the record, and we find no clear error in its conclusion that the bonus transaction was fair to the company.[1]

---

[1]    Because we conclude that the bonus transaction was fair to the corporation, we need not reach plaintiffs' challenge to the district court's alternative holding that equitable principles would also support affirming the bonus transaction.

B.  The Business Judgment Rule

Next we consider the district court's application of the business-judgment rule.  Under that rule, when a reasonable basis exists to indicate that the directors of a corporation acted in good faith, the directors are immunized from liability for honest mistakes or errors of judgment.  *See Ski Roundtop, Inc. ex rel. Ski Yellowstone Inc. v. Hall*, 658 P.2d 1071, 1078 (Mont. 1983).  The district court considered the Gatelys' actions as directors under the business-judgment rule and concluded that those actions would satisfy the rule.  In answering the certified questions, however, the Montana Supreme Court instructed that the business-judgment rule should not be applied to a director's conflict-of-interest transaction.

But the district court's holding simply provided an alternative basis to affirm the bonus transaction.  The district court recognized that there was no Montana law on point, but noted that it "need not try to determine how Montana would rule on this question . . . because the facts satisfy both the more liberal business judgment rule and the more exacting fairness standards." Aplt. App., Vol. 1 at 29 n.3.  Because we affirm the district court's conclusion that the bonus was fair to the corporation, any error in the district court's application of the business-judgment rule is harmless.

C.  Fiduciary-Duty Claim

Plaintiffs also challenge the district court's application of the *Daniels* test to their breach-of-fiduciary-duty claim.  The district court concluded that in *Daniels* Montana had created a modified rule for judicial review of alleged breaches of fiduciary duty by the controlling group in closely held corporations.  Under the modified rule, if the controlling group in a closely held corporation can demonstrate a legitimate business purpose for its actions, and the minority stockholder cannot demonstrate a less harmful alternative, then the disputed transaction should be upheld.  *Daniels*, 804 P.2d at 366.  Applying this standard, the district court concluded that defendants had "shown that the stock compensation bonus to R. Gately served a specific and legitimate business purpose."  Aplt. App., Vol. 1 at 31.  The court further concluded that "[t]he minority stockholders did not demonstrate a less harmful alternative that would achieve the same business purposes–i.e., keeping R. Gately from resigning.  In fact, the minority stockholders did not propose any alternatives." *Id*.  The district court therefore determined that the bonus transaction did not constitute a breach of fiduciary duties.

Plaintiffs dispute the district court's application of the modified rule from the *Daniels* case.  In answer to our certified questions, however, the Montana Supreme Court approved the application of the *Daniels* test to a fiduciary-duty claim challenging the actions of the majority shareholder.  Plaintiffs also assert

that the district court erred in finding that they had not proposed less harmful alternatives. Because the record supports the district court's finding, there was no error.

III.

We AFFIRM the judgment of the district court.

Entered for the Court


Wade Brorby
Senior Circuit Judge