No. 85-86

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

DOBBINS, DEGUIRE & TUCKER, P.C.,

        Plaintiff and Appellant,

-vs-

RUTHERFORD, MacDONALD & OLSON, a
partnership, et al.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Worden, Thane & Haines; Ronald A. Bender, Missoula,
        Montana

    For Respondent:

        Mulroney, Delaney & Scott; P. Mars Scott, Missoula,
        Montana

---

Submitted on briefs: June 28, 1985

Decided: November 6, 1985

Filed: NOV 6 ~ 1985

_Ethel M. Harrison_
_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Dobbins, DeGuire & Tucker, P.C., (Dobbins) sued Rutherford, MacDonald and Olson (defendants) as a partnership and individually, for violation of a public accounting employment contract. The contract required payment to Dobbins if defendants obtained certain clients of Dobbins within 12 months after employment termination. Upon motion of defendants to dismiss the complaint for failure to state sufficient facts upon which relief could be granted, the Missoula County District Court dismissed the complaint. Dobbins appeals. We reverse.

The sole issue on appeal is whether the District Court erred in dismissing Dobbins' complaint.

The complaint alleged the following facts:

Between November 1978 and October 1980, defendants signed written employment contracts with Dobbins under which each agreed that certain restrictions would apply following termination of employment. The contracts in pertinent part stated:

> 5. If this Agreement is terminated and Employee enters into a public accounting business for himself, in partnership with one or more accountants . . . Employee agrees as follows:
>
> a. To pay to employer an amount equal to one hundred percent (100%) of the gross fees billed by Employer to a particular client over the twelve month period immediately preceding such termination which was a client of Employer within the twelve month period prior to Employee's leaving Employer's employment, but which client is thereafter within one year of date of termination served by Employee, Employee's partners, . . .
>
> b. Such sum shall be paid in monthly installments over a three year period, the first such installment being due within thirty (30) days of the date when Employee, Employee's partners, . . . does work for a particular client, and which

payments, exclusive of the initial payment shall include interest as hereinafter stated.

c. Such sum shall bear interest at the rate of eight percent (8%) per annum on the declining balance which interest shall commence the date first payment is due. Employee or his authorized representatives shall be allowed to prepay any such amounts in full, or in part, without penalty, provided that if paid only in part, that the monthly installments thereafter required shall not be reduced.

d. Employee agrees that he shall provide all records necessary to carry out the intent of this Agreement and shall report immediately to Employer when services have been provided a particular client.

6. Employee enters into this Agreement with full understanding of the nature and extent covered by the restrictive agreements contained in the immediately preceding paragraph, and Employee realizes that because of the unique nature of the business, this Agreement would not be entered into without the Agreements contained herein. . . .

One of the defendants worked for Dobbins until September 30, 1983; the other two until October 31, 1983. While employed by Dobbins, the defendants became acquainted with Dobbins' clients. In November 1983, the defendants opened a public accounting office in Missoula where the Dobbins' office is located. Finally, the complaint alleges that the defendants have been engaged, and are now engaged, directly and indirectly through others, in accepting and soliciting accounting work from Dobbins' clients. The complaint also alleges that Dobbins has demanded an accounting, which the defendants have refused to give. The complaint prays for an accounting and payment of the sum determined to be due plus 8 percent interest.

The issue of whether the District Court erred in dismissing Dobbins' complaint turns on whether the above-quoted provisions of the employment contract are

3

enforceable.    Section 28-2-703, MCA, provides in pertinent part:

> Contracts in restraint of trade generally void.  Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void.

Section 28-2-704, MCA, in substance provides that one who sells the goodwill of a business may agree to refrain from carrying on a similar business under certain conditions within certain areas.  In a similar manner, § 28-2-705, MCA, in substance provides that on dissolution of a partnership, partners may agree that a partner may not carry on a similar business within those areas.  As pointed out by the District Court, neither §§ 28-2-704 or -705 is applicable in the present case.

The District Court relied on J. T. Miller Co. v. Madel (1978), 176 Mont. 49, 575 P.2d 1321, in reaching its conclusion that the contract provisions were void under § 28-2-703, MCA.  In Madel, an insurance salesman signed an employment contract with the following covenants:

> The Employee agrees and covenants that for a period of five (5) years after the termination of this Agreement, he will not directly or indirectly own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any business which sells credit life, credit accident, health or other insurance to any customer of the Employer with whom the Employee has at any time had any dealings on behalf of the Employer; contact or solicit any customers of the Employer with whom the Employee has at any time had any dealings on behalf of the Employer; or sell or deliver to any customers of the Employer any insurance sold by the Employee while an Employee of the Employer as set out in this contract.

Madel, 176 Mont. 51, 575 P.2d 1322. The covenant effectively prohibited the insurance salesman from engaging in the sale of insurance in any manner for a period of 5 years. This Court concluded that the restrictive covenant did not qualify under the statutory exceptions of what is now § 28-2-703, MCA, and that accordingly, the statute prohibited the restraint asserted in the covenant. With regard to the use of confidential information, this Court pointed out that the insurance salesman did nothing more than to contact banks, which were obviously known and open to all vendors of credit life insurance, and that no privileged information was required.

There are statements made in Madel which are sufficiently broad to support the conclusion of the District Court that any type of a restriction upon the exercise of a lawful profession must be invalidated. However, in Madel the covenant not to compete was, in effect, an absolute prohibition upon Madel's right to engage in the business of selling insurance. We construe the holding in Madel as being limited by that fact.

In contrast to Madel, here the contract does not on its face prohibit the defendants from engaging in the business of public accounting. In fact, the contract does not even directly restrain the defendants from exercising or engaging in the profession of public accounting. The contract contains neither area nor time limitations on defendants' practice of accounting. In addition, it does not prohibit the defendants from using confidential information obtained in the course of their employment at Dobbins as a basis for securing Dobbins' clients.

In substance, the contract required payment of a fee if the defendants obtained a Dobbins' client within 12 months

5

after their employment with Dobbins ceased. On its face, that is not an unreasonably long period. In addition, an amount equal to 100% of the gross fees billed by Dobbins over the 12 month period preceding termination must be paid in monthly installments over a three year period. This suggests that the amount of the fee and the method of payment on the face of the contract do not appear unreasonable. In a similar manner, the requirement for the payment of interest at the rate of 8% does not appear unreasonable on its face. We conclude that the contract provisions between Dobbins and the defendants are not comparable to the contract provisions in Madel.

In O'Neill v. Ferraro (1979), 182 Mont. 214, 596 P.2d 197, this Court considered a lease provision under which the landlord agreed it would not permit a competing full service restaurant to be maintained at the Bozeman Hotel. The Court concluded that the covenant prevented the operation of a Mexican food restaurant in the same hotel and that § 28-2-703, MCA, did not require a voiding of all restrictions on engaging in a trade. The Court adopted a test by which reasonable covenants are to be distinguished from unreasonable restraints:

> Three things are essential . . . [for a reasonable] covenant:
>
> "(1) it must be partial or restricted in its operation in respect either to time or place; (2) it must be on some good consideration; and (3) it must be reasonable, that is, it should afford only a fair protection to the interests of the party in whose favor it is made, and must not be so large in its operation as to interfere with the interests of the public." Eldridge v. Johnston (1952), 195 Or. 379, 245 P.2d 239, 250.

O'Neill, 182 Mont. 218-19, 596 P.2d 199. Although O'Neill was decided in the context of trade, we conclude that similar principles should be applied in the present case.

The District Court referred to the annotation in 13 A.L.R. Fourth 661. We note the general conclusion of that annotation is consistent with our holding in the present case. The annotation points out that in the absence of a controlling statute the enforceability of a covenant not to compete, ancillary to the withdrawal of a partner from an accounting firm, depends upon whether the restriction is reasonably related to the legitimate business interest of the remaining partners and is not unduly burdensome to the covenantor or the public.

For the assistance of the District Court in the event of trial, we state the following rule to be applied in determining whether a covenant is a reasonable restraint on the profession of public accounting:

> (1) The covenant should be limited in operation either as to time or place; (2) the covenant should be based on some good consideration; and (3) the covenant should afford a reasonable protection for and not impose an unreasonable burden upon the employer, the employee or the public.

This test requires a balancing of the competing interests of the public as well as the employer and employee.

We hold that the written contract provisions do not constitute a restraint prohibited by § 28-2-703, MCA. We reverse and remand with instructions that the complaint shall be reinstated by the District Court and further proceedings had consistent with this opinion.

_____
Justice

7

We concur:

_R. B. Turnage_
Chief Justice

_John Conway Harrison_

_William E. Hunt_

_Frank B. Morrison_

_John C. Sheehy_

_L. C. Gulbrandson_
Justices