No. 02-766

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 272N

INDIVIDUAL NURSING STAFF, INC., a Montana
Profit Corporation; CAMILLE BUKSCH, individually;
and VIOLA STEIER, individually,

Plaintiffs and Appellants,

v.

LUTHERAN RETIREMENT HOME, INC., a Montana
Non-Profit Corporation, doing business as ST. JOHN'S
RETIREMENT HOME, as a division of ST. JOHN'S
LUTHERAN MINISTRIES, INC.; JOHN'S
LUTHERAN MINISTRIES, INC.,

Defendants and Respondents.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 2001-0746,
                Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Gerald J. Neely, Attorney at Law, Billings, Montana

        For Respondents:

        W. Anderson Forsythe and Vicki L. McDonald, Moulton, Bellingham,
        Longo & Mather, P.C., Billings, Montana

                                Submitted on Briefs:  July 30, 2003

                                Decided:  October 2, 2003

Filed:

        _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The present case revolves around the termination of what was admittedly a "sweetheart deal" between Camille Buksch (Buksch) and St. John's Lutheran Ministries, Inc. (St. John's). Buksch, her corporation Individual Nursing Staff, Inc. (INS), and employee Steier sued St. John's for intentional interference with prospective or future business or economic advantage, breach of the covenant of good faith and fair dealing, defamation, breach of the lease, libel and slander. St. John's moved for summary judgment on all claims except the defamation count. INS, Buksch and Steier countered for summary judgment in their favor. The District Court entered an order of summary judgment in favor of St. John's. From this order, INS, Buksch and Steier now appeal. We affirm.

## ISSUES

¶3 On appeal, the issues are:

(1) Was there a master oral contract containing a covenant not to compete?

(2) Did St. John's breach the lease?

(3) Did St. John's breach the covenant of good faith and fair dealing?

(4) Did St. John's intentionally interfere with prospective business advantage?

2

FACTS

¶4    St. John's operates a nursing home business, which includes a retirement wing. Self-sufficient elderly people who do not yet need the full services of a nursing home rent studio apartments in the retirement wing and are provided meals by St. John's. St. Johns's supplied these residents with minimal nursing assistance. In 1989, because of its own interpretation of a regulation, St. John's decided it would no longer directly provide nursing services to residents of its retirement wing. A St. John's administrator approached Buksch, who was employed as a licensed nurse practitioner, and advised her of the situation. That administrator urged Buksch to quit her job with St. John's and start independently contracting with the residents for nursing services. Buksch did not want to lose the security of wages and benefits. She came to an agreement with St. John's that she would attempt to individually contract with the residents, but if that did not work out within sixty or ninety days, St. John's would re-employ Buksch.

¶5    Buksch never asked for her job back because the arrangement turned out to be very profitable for her. Buksch formed a corporation, INS, of which she is an employee and the sole shareholder. INS contracts with the residents to provide nursing services. The other named plaintiff and appellant, Viola Steier, was also a nurse employed by INS. INS entered into a lease agreement with St. John's in 1997, whereby INS agreed to rent a nursing station for fifty dollars a month from St. John's. The nursing station included a closet so that INS could lock up its medication cart, and use of a desk, a phone and a refrigerator, which was shared with St. John's personnel. Because they were mostly self-sufficient, the retirement

3

wing residents used INS's services for such minimal tasks as reminding them to take their medications, occasional prompting with dress, and contracting-out for services to assist with bathing. INS personnel were only present during the day. If an emergency were to occur, a nurse from St. John's nursing wing would respond.

¶6     This business arrangement was profitable for Buksch. In 2000, the last year of full operations, Buksch received about $36,000 in wages as an employee of INS. As the owner of INS, Buksch had profits of $47,000. In addition, INS provided a car for Buksch's personal use and insurance for her, her husband and her children.

¶7     In 2000, St. John's applied for a HUD grant to remodel the retirement wing. St. John's knew that if the grant was awarded, the retirement wing would have to meet the state standards for an assisted living facility. Those standards at the time required supervision and care of the residents twenty-four hours a day. In mid 2000, Buksch met with St. John's administrators and was informed that St. John's was considering three different options to supply the twenty-four-hour care: provide it themselves, contract with INS, or contract with a third party. In December 2000, Buksch learned that St. John's had been awarded the grant, and it would have to proceed with a plan to supply twenty-four-hour care. Buksch declined to avail herself of this business opportunity, since she could not afford the extra staff and would not pass extra costs on to the residents. The recollections of all the parties clearly indicate that in January 2001, St. John's informed Buksch that it was going to provide the twenty-four hour care to the residents itself, rather than contracting with a third party such as INS. As of January 2001, it was clear to everyone that St. John's would begin providing

4

nursing services on May 1, and INS would stop at that time. St. John's and Buksch discussed the transition, including options for training and orienting St. John's new staff.

¶8 The training and orienting was to begin on April 16. Buksch made certain she would have thirty days to give her clients notice as required by her contracts with them. Buksch told St. John's administrators that she would not force the residents to choose between INS and St. John's. Buksch repeatedly indicated that her business would soon end, and that she did not want to work for St. John's. Further, she prepared a letter for her clients indicating INS would soon terminate services. This letter was prepared prior to the date in March on which Buksch claims to have been given actual notice of St. John's intent to not renew her lease.

¶9 During this transition, relations between St. John's and INS soured. St. John's informed INS, Buksch, and Steier that they could either apply for jobs with St. John's or continue to try to contract with the residents, but that the lease for the nursing station would not be renewed. Appellants claim that St. John's acted dishonestly when it met with residents, telling them Buksch and her employees had been offered jobs when in fact they had not. Buksch claims, *inter alia*, that St. John's did not tell her until March 15, fourteen days after its automatic renewal, that it was not going to renew her lease of the nursing station.

¶10 The lease in question is typewritten, signed by both parties and dated March 1, 1997. By its terms, it is a twelve-month lease and is automatically renewed unless one of the parties, "requests reopening lease for negotiations thirty (30) days prior to any twelve (12)

5

month period." There is also a Default clause, but it only refers to a default on the part of the lessee, INS. Other than these provisions, there are no terms for termination of the lease.

## STANDARD of REVIEW

¶11 The review of an appeal from a grant of summary judgment is *de novo*. *Kullick v. Skyline Homeowners Assoc., Inc.,* 2003 MT 137, ¶ 13, 316 Mont. 146, ¶ 13, 69 P.3d 225, ¶ 13. This Court will apply the same standards as the trial court under Rule 56, M.R.Civ.P. The moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Kullick*, ¶ 13. Once the moving party has met its burden, the opposing party must, in order to raise a genuine issue of material fact, present substantial evidence essential to one or more elements of its case rather than mere conclusive or speculative statements. *Kullick,* ¶ 13. Our standard of review of a question of law is whether the trial court's legal conclusions are correct. *Gonzalez v. Walchuck,* 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9.

## DISCUSSION

¶12 The underlying premise of Appellants' numerous claims is the existence of a covenant not to compete. The Appellants claim that the meeting between Buksch and St. John's administrators in 1989 created a valid "master" oral contract including an implied covenant not to compete. The lease is understandable only as part of this "master" contract, so it necessarily incorporates the same implied terms. Appellants contend that the oral contract and lease give rise to a claim for breach of the covenant of good faith. Lastly, Appellants claim interference with prospective or future business or economic advantage.

6

¶13     The undisputed facts are insufficient to establish the existence of an enforceable oral contract with all of the terms Buksch advances. All contracts may be oral except those that are specifically required by statute to be in writing. Section 28-2-901, MCA. All contracts must contain four essential elements: (1) identifiable parties capable of contracting, (2) their consent, (3) a lawful object, and (4) consideration. Section 28-2-102, MCA. Furthermore, the terms must be certain. Restatement (Second) of Contracts § 33 (1981). Although contracts in restraint of trade are generally void by statute, § 28-2-703, MCA, covenants not to compete extending beyond one year are enforceable when they are in writing, § 28-2-903(1), MCA, and the terms are explicit and reasonable in time and place. *See, e.g., Dobbins, DeGuire & Tucker v. Rutherford, etc.* (1985), 218 Mont. 392, 708 P.2d 577 (agreement of employee accountants not to take firm's clients within twelve months of termination of employment was enforceable); and *O'Neill v. Ferraro* (1979), 182 Mont. 214, 596 P.2d 197 (lessor's covenant with restaurant lessee not to rent space in building to another restaurant was enforceable).

¶14     Here, the alleged master contract fails for lack of consent. Further, the alleged covenant not to compete extended beyond one year, was not in writing, and had neither explicit terms nor a reasonable limitation in time. The undisputed facts indicate St. John's promised that if Buksch's independent contracting with the residents did not work out within sixty to ninety days, she could have her old job back. Other than that oral promise, no other terms are certain. It is axiomatic that it is not possible to consent to terms which are uncertain.

7

¶15     The record supports the District Court's conclusion that, beyond the 90-day safety net agreement, there was no oral master contract between the parties.  The District Court correctly concluded that in the absence of an enforceable and on-going master agreement to provide nursing services, there was no basis for a claim for breach of the covenant of good faith and fair dealing and any alleged breaches of the lease of the nursing station were rendered moot.

¶16     Appellants also assert the District Court erred in denying their claim for intentional interference with prospective economic advantage.  That claim requires acts that:

> (1) are intentional and willful;
> (2) are calculated to cause damage to the plaintiff's business;
> (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and
> (4) result in actual damages or loss.

*Maloney v. Home Inv. Center, Inc.*, 2000 MT 34, ¶ 41, 298 Mont. 213, ¶ 41, 994 P.2d 1124, ¶ 41.  The District Court dismissed the claim because of a lack of a showing on the third element.  The burden is on the plaintiff to demonstrate that the actions were done "without right or justifiable cause."  *Bolz v. Myers* (1982), 200 Mont. 286, 295, 651 P.2d 606, 611.  Here, St. John's gave early notice about the HUD grant process, provided plaintiff-appellants with several accommodating options, and ultimately decided to provide all of the nursing services required.  When St. John's stopped providing nursing services to its retirees in 1989, it did so of its own volition, and it was free to do so.  St. John's was similarly free to reenter the nursing services market.  It took reasonable steps necessary to achieve that end.  St. John's gave sufficient and timely notice to the Appellants.  Further, St.

8

John's gave Appellants several business options, all of which they soundly rejected. Appellants have failed to meet the third element of this claim. The District Court was correct in concluding that St. John's purpose was to improve the quality of service, not cause damage to INS.

¶17    Because of the foregoing, the decision of the District Court is affirmed.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ JIM RICE