DA 07-0611

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 284

APPLE PARK, L.L.C.,

      Plaintiff and Appellee,

v.

APPLE PARK CONDOMINIUMS, L.L.C.,
and ANDREW SAUNDERS, Individually,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2006-107A
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Richard De Jana, Richard De Jana & Associates, PLLC,
Kalispell, Montana

      For Appellee:

          Sean S. Frampton, Morrison & Frampton, PLLP, Whitefish, Montana

      Submitted on Briefs:  July 8, 2008

      Decided:  August 12, 2008

Filed:

_____

          Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Andrew Saunders, a New York resident, incorporated Apple Park Condominiums, L.L.C., for the purpose of purchasing a multi-unit condominium building in Kalispell, Montana. Apple Park, L.L.C. (Seller) and Apple Park Condominiums, L.L.C. and Saunders (Buyers) entered into a Buy/Sell Agreement (Agreement) in July 2005. Subsequently, Buyers refused to close on the Agreement. Seller sued and the Eleventh Judicial District Court ruled that Buyers had breached the contract. Buyers appeal. We affirm.

## ISSUES

¶2 A restatement of the dispositive issues on appeal is:

¶3 Did the District Court abuse its discretion in excluding affidavit testimony submitted by Buyers' witnesses on the basis that said testimony contained inadmissible hearsay?

¶4 Did the District Court err in finding that Buyers failed to raise a genuine issue of material fact vis-à-vis encroachments on the property?

¶5 Did the District Court err in concluding that the absence of utility easements for individual condominium units was not a "Condition of Title" as set forth in the Buy/Sell Agreement?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 In July 2005, Seller and Buyers entered into a Buy/Sell Agreement for a sixteen-unit condominium building located in Kalispell, Montana. Closing was set for September 15, 2005, and Buyers paid $10,000 in earnest money to the Sterling Title Company. The

2

parties agreed in writing to extend the closing date twice with a final closing date set for October 31, 2005. Additionally, the parties agreed in a second addendum that Buyers would reimburse Seller $4,288.80 at closing for gutter repair work performed on the property. Buyers refused to close on October 31. On February 9, 2006, Seller brought a civil action against Buyers for breach of contract. Seller argued for the right to retain the earnest money plus interest, and also sought reimbursement for the gutter repair and attorney's fees and costs.

¶7 Seller filed a motion for summary judgment on the ground that the undisputed facts demonstrated that Buyers breached the contract and Seller was entitled to the relief requested. Buyers filed a cross-motion for summary judgment alleging they were legally entitled to forego closing on the ground that they had notified Seller of three problems that Seller had not remedied. The three problems Buyers identified were: (1) an error in the legal description of the property in the property title; (2) an encroachment on the property; and (3) the lack of easements by each individual unit for utilities through the common areas on the property. They maintain that the Seller should have corrected these defects before the day of closing and Seller's failure to do so legally excused them from closing. Buyers maintained they were entitled to the return of their earnest money and should not be responsible for reimbursing Seller for gutter repair work. Moreover, Buyers sought attorney's fees and prejudgment interest.

¶8 The District Court determined that the undisputed facts revealed that the erroneous property description in the title was corrected by October 31; the encroachment identified by Buyers was removed prior to the scheduled closing; and the lack of an easement for

3

the individual condominium units across the common area of the property was not an adverse title condition excusing Buyers from performing. The court concluded therefore that none of these claims excused Buyers from performing.

¶9 The District Court held that the Buyers breached the contract and that the Seller was entitled to the earnest money. The court also held that Buyers were not required to reimburse Seller for the gutter repair costs because such reimbursement was contingent upon Buyers owning the property. The court observed that both parties had agreed that prejudgment interest and attorney's fees should be awarded to the prevailing party; therefore, the Seller was instructed to submit an affidavit setting forth those costs to the District Court for payment by Buyers. Seller did so and after determining the appropriate interest, the court awarded Seller approximately $9,000.00.

¶10 Buyers appeal.

**STANDARD OF REVIEW**

¶11 We review de novo a district court's grant of summary judgment, using the same standards applied by the district court under M. R. Civ. P. 56. *Rich v. Ellingson*, 2007 MT 346, ¶ 12, 340 Mont. 285, ¶ 12, 174 P.3d 491, ¶ 12. The moving party has the burden of establishing the absence of a genuine issue of material fact, and entitlement to judgment as a matter of law. *Rich*, ¶ 12. Once the moving party has met this burden, the non-moving party must present substantial evidence essential to one or more elements of the case to raise a genuine issue of material fact. *Rich*, ¶ 12. "The non-moving party must set forth *specific facts* and cannot simply rely upon their pleadings nor [sic] upon speculative, fanciful, or conclusory statements." *Hiebert v. Cascade County*, 2002 MT

4

233, ¶ 21, 311 Mont. 471, ¶ 21, 56 P.3d 848, ¶ 21 (quotation omitted, emphasis in original).

¶12 We review the conclusions of law upon which the district court bases its decision to determine if they are correct. *Rich*, ¶ 12. In the context of a summary judgment ruling, we review the district court's admission or exclusion of evidence for an abuse of discretion. *Hiebert*, ¶ 22.

## DISCUSSION

¶13 *Did the District Court abuse its discretion in excluding affidavit testimony submitted by Buyers' witnesses on the basis that said testimony contained inadmissible hearsay?*

¶14 In response to Seller's motion for summary judgment and its concomitant implication that no material facts were in dispute, Buyers argued that whether the encroachments had been removed from the property by October 31 was a question of material fact and was in dispute. To support their argument, Saunders' New York attorney, Rodney H. Ertischek, submitted testimony to the District Court by affidavit which stated in relevant part:

> Thomas Dean and Hoskins ("TD&H"), a local Kalispell engineering firm, was retained by [Buyers] to verify whether the adverse conditions had been rectified. On October 31, 2005, I was notified by them that the encroachments were still on the property. After advising my clients . . . both I and [Buyers] received photographs from TD&H demonstrating that as of October 31, 2005 encroachments still existed on the Premises.

Seller challenged Ertischek's affidavit as containing parol evidence and inadmissible hearsay. Saunders subsequently submitted an affidavit to the court containing essentially the same statement as that contained in Ertischek's. Additionally, Buyers submitted an

5

affidavit of the TD&H engineer, Ray Halloran, who took the photographs referenced in the affidavit that purportedly represented the continued existence of the encroachments as of October 31, 2005. The District Court concluded the statements in Ertischek's and Saunders' affidavits constituted inadmissible hearsay and therefore did not consider these affidavits in determining whether the encroachments remained on the property. As stated above, the court decided the encroachments had been removed before October 31.

¶15 On appeal, Buyers assert that the above-quoted testimony from the affidavits is not hearsay but rather establishes "why" Buyers refused to close on the transaction and is admissible for this purpose. They maintain that a "statement offered not to prove the truth of the matter asserted but for the purpose of showing that the statement was made and the resulting state of mind is admissible." They insist that the statements should not have been excluded as hearsay but should have been admitted to show the reason for their actions. With regard to the photographs provided by TD&H to Buyers and attorney Ertischek and e-mails sent by the parties, Buyers argue that these are business records that qualify as an exemption to the rule against hearsay.

¶16 Seller maintains that Buyers are presenting a new legal theory on appeal. It asserts that while in District Court, Buyers did not counter Seller's "hearsay" argument with the argument being presented on appeal. In other words, they did not argue to the District Court that the affidavits were admissible to show their "motivation for acting" or as business records. Seller opines that because Buyers are presenting a new legal theory on appeal, we should decline to address the issue. Alternatively, Seller reiterates its

6

argument that the challenged evidence is hearsay and was correctly excluded for purposes of ruling on summary judgment.

¶17 Buyers admit that Seller's "new theory" argument "[t]o an extent . . . is true," but argue that the District Court excluded the affidavit evidence "on its own ruling and not [on] the objection raised below," and they had no opportunity to address the court's ruling until this appeal. While it is impossible to determine whether the District Court excluded the evidence based on Seller's objection or on its own rationale, we will nonetheless address the issue on the merits.

¶18 The affidavit testimony is hearsay and was properly excluded from evidence. Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. M. R. Evid. 801. Hearsay is not admissible unless it meets a statutory or regulatory exception. M. R. Evid. 802. In the case before us, a Kalispell engineer told Ertischek, who was in New York, that the encroachment remained on the property. Ertischek, in turn, relayed this information to Saunders, who was also in New York. Neither Ertischek nor Saunders had personal knowledge as to whether the encroachments had been removed or not. Both Ertischek and Saunders in turn submitted the engineer's information as testimony in their affidavits to prove that the encroachments remained on the property; therefore, they were submitting this information to justify their refusal to close. Under *Smith v. Bur. Northern and Santa Fe Ry. Co.*, 2008 MT 225, ¶ 41, 344 Mont. 278, ¶ 41, 187 P.3d 639, ¶ 41, Ertischek's and Saunders' affidavits do not satisfy the required "personal knowledge" standard.

7

¶19 In *Smith*, Smith was killed at the Hesper railroad crossing outside of Billings, Montana, when his car collided with a BNSF train. His daughter brought a wrongful death and survival action against the railroad claiming, in part, that BNSF was negligent in its installation of warning devices at this particular crossing. *Smith*, ¶ 2. BNSF sought partial summary judgment asserting that Smith's claim was preempted by federal railroad law because federal funds were used to install warning devices at railroad crossings across Montana, including the Hesper crossing. *Smith*, ¶ 4. As evidence, BNSF submitted multiple affidavits with documentary exhibits from individuals who stated that federal funds were used for improvements to crossings throughout Montana; however, they had no personal knowledge that such funds were used at the Hesper crossing. *Smith*, ¶¶ 26-30. Based on these affidavits and the attached documents reviewed and relied upon by the affiants, the District Court granted BNSF's motion for partial summary judgment. *Smith*, ¶ 4.

¶20 Smith appealed the District Court's ruling arguing, among other things, that the BNSF affidavits were not based on personal knowledge and therefore should not have been relied upon by the District Court. *Smith*, ¶ 34. We agreed, stating that under M. R. Civ. P. 56(e), an affidavit presented in a summary judgment proceeding which is not based on personal knowledge "does not raise a genuine issue of material fact as a matter of law." *Smith*, ¶ 41. We held that affiants for BNSF did not have the requisite "personal knowledge" and therefore did not demonstrate the absence of a genuine issue of material fact. The same holding applies to the case before us.

8

¶21 Moreover, the e-mails and photographs submitted by Halloran, Saunders and Ertischek are not admissible as business records under M. R. Evid. 803(6). Buyers do not direct us to any place in the record where they presented these e-mails and photographs for admission as business records or where they established the necessary foundation for admission. *Rafanelli v. Dale*, 278 Mont. 28, 45, 924 P.2d 242, 253 (1996). Again, in *Smith*, we adopted the rule that unauthenticated documents will not be considered on a motion for summary judgment. *Smith*, ¶¶ 47-48, *citing Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1990). The District Court did not abuse its discretion by excluding the hearsay testimony or the e-mails and photographs.

¶22 *Did the District Court err in finding that Buyers failed to raise a genuine issue of material fact vis-à-vis encroachments on the property?*

¶23 Having excluded the hearsay evidence from Saunders' and Ertischek's affidavits, the District Court determined that the remaining portions of the affidavits did not raise a genuine issue of material fact as to the encroachments. Turning to Halloran's affidavit in which he stated "[a]s of October 31, 2005 an encroachment *appeared* to still be present on the property" (emphasis added), the District Court determined that this "speculative" claim was insufficient to raise a genuine issue of fact. In addition to Buyers' witnesses, the court received testimony from one of Seller's co-managers, Earl Holbeck, who stated that after receiving permission from the owner of the encroachments, Holbeck hired three people to do the removal work. He inspected the job upon completion and paid the workers on October 29. Based on this evidence, the District Court concluded that the

9

encroachments were in fact removed from the property before October 31 and that the Buyers had failed to raise a genuine issue of material fact as to the encroachments.

¶24 We affirm the District Court's ruling. As we have held previously, speculative statements are insufficient to raise genuine issues of material fact. *See Stanton v. Wells Fargo Bank Monana., NA*, 2007 MT 22, ¶ 29, 335 Mont. 384, ¶ 29, 152 P.3d 115, ¶ 29. The District Court was presented with conflicting arguments regarding whether the encroachments had been removed before October 31, 2005. However, Seller presented non-speculative evidence while Buyers presented merely speculation as to whether the encroachments still existed. The District Court correctly relied on the non-speculative evidence in determining whether Buyers had raised a genuine issue of material fact.

¶25 *Did the District Court err in concluding that the absence of utility easements for individual condominium units was not a "Condition of Title" as set forth in the Buy/Sell Agreement?*

¶26 Buyers claim that the District Court erred as a matter of law when it held that the absence of utility easements for the individual condominium units was not a condition adversely affecting the title to the property, and as a result Buyers were not legally excused from performing on this basis. Buyers assert that the Declaration of Unit Ownership, one of the documents pertinent to this transaction which was created by the original developers of the property in 1973, defines and describes the property and provides for certain easements but does not account for "open space" through which the underground utilities must travel to get to the buildings and the individual units. Buyers maintain that the absence of such easements associated with each unit through these "open spaces" (which Buyers neither identify nor describe by location), creates an

adverse title condition. They submit that the "Condition of Title" term of the Agreement required Seller to agree "that no additional encumbrances, restrictions, easements or other adverse title conditions will be placed against the title to the property subsequent to the effective date of the preliminary title commitment approved by the Buyer." They complain that the "lack of easement was shown in the commitment and was not approved by the Buyer," and therefore they were entitled to refuse to close.

¶27 Seller argues that the absence of an express provision for these easements was not a title defect and did not affect their ability to convey clear title; therefore, the District Court correctly concluded that the non-existence of the easements was not a condition of title. Seller argues that Buyers misinterpret the relied-upon provision of the Agreement and that "Condition of Title" refers to circumstances that affect the viability of title and any encumbrances on the title to the property. It states that the first sentence in the "Condition of Title" provision provides that "All mortgages, judgements, and liens shall be paid or satisfied by the Seller at or prior to closing unless otherwise provided herein." Seller maintains that the second sentence of this provision, relied upon by Buyers, must be read in conjunction with the first sentence to mean that Seller should not place any additional mortgages, judgments, or liens against the property after the date of the title commitment. Therefore, it asserts, the language of this provision was not intended to apply to the easement situation of which the Buyers complain.

¶28 Seller also proffers that a party owning both the dominant and servient estates may choose to dedicate a portion of the estates to a described easement, or may chose to not do so. Either way, such choice does not affect the viability of the title. While Buyers

11

argue that under these circumstances the utility companies would hold the dominant estate and the condominiums would hold the servient estate, the fact is that the Seller was selling, and Buyers were buying, the entire property, inclusive of all units and appurtenances. If Buyers wanted each unit to have a stated right to access the utility areas, Buyers, as the property owners, could have affirmatively granted such right to each unit upon acquisition of the property.

¶29 Seller notes that the condominium units have operated as such for over thirty years and this historic use would be sufficient to establish an easement by prescription should that ever become necessary. They also opine, as did the District Court, that Buyers could have required the express establishment of these easements in a written addendum to the Agreement to be a condition precedent to closing but they did not do so.

¶30 The District Court determined that the lack of express utility easements in this case was not a condition that adversely affected title. For the reasons set forth above, we agree. Moreover, while Buyers have submitted the treatise, Carroll G. Patton & Joyce D. Palomar, *Patton and Palomar on Land Titles* (3d ed., West, 2001), as authority for the proposition that "[a]ny particular parcel of property comprises not only the land described, but also all appurtenances . . . [including] appurtenant easements," this proposition does not support Buyers' theory that the absence of individual unit easements in this case is an adverse condition of title. In conclusion, we do not interpret the Agreement to allow Buyers to refuse to close based on this ground.

## CONCLUSION

12

¶31     For the foregoing reasons, we affirm the District Court's order granting Seller's motion for summary judgment and denying Buyers' motion for partial summary judgment.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART