FILED

December 15 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0046

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 426

DR. JAMES MUNGAS, DR. MICHAEL DUBE, DR. JAMES
ENGLISH, DR. THOMAS KEY, DR. DALE MORTENSON,
DR. GRANT HARRER, and DR. GERALD SPENCER
("INDEPENDENT DOCTORS"),

        Plaintiffs and Appellees,

    v.

GREAT FALLS CLINIC, LLP,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADV 06-187
Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Robert B. Pfennigs; Axilon Law Group, PLLC, Great Falls, Montana

            T. Thomas Singer; Jardine, Stephenson, Blewett & Weaver, P.C.,
Billings, Montana

        For Appellees:

            Michael D. Cok, Theodore R. Dunn; Cok Wheat & Kinzler,
Bozeman, Montana

        Submitted on Briefs:  September 3, 2009

                Decided:  December 15, 2009

Filed:

_____
              Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     The Eighth Judicial District Court, Cascade County, granted summary judgment in favor of the Appellees, who are physicians and former partners in the Great Falls Clinic (Clinic).  The District Court concluded that a portion of the Clinic partnership agreements is void under § 28-2-703, MCA, as a restraint upon exercising a lawful profession and granted summary judgment in favor of the Appellees.  The Clinic appeals.

¶2     The facts which relate to the positions of Doctors Mungas, Dube, Mortenson, Harrer and Spencer differ from those relating to Doctors English and Key.  The issues presented are:

¶3     Issue 1:  Did the District Court err in not dismissing the claims of Doctors Mungas, Dube, Mortenson, Harrer and Spencer, because the Clinic's obligations to them have been satisfied?

¶4     Issue 2:  Is the claim of Dr. English barred by the provisions of § 35-10-619(9), MCA, a statute of limitation in Montana's version of the Revised Uniform Partnership Act?

¶5     Issue 3:  Did the District Court err in holding that the goodwill exception to the prohibition against contracts restraining trade does not apply?

¶6     Issue 4:  Did the District Court err in concluding that the provision of the Clinic's partnership agreements providing for forfeiture by a dissociating partner who practices in the Great Falls area is void as a matter of law?

¶7     Issue 5: Did the District Court err in awarding attorney fees?

2

## BACKGROUND

¶8     The Great Falls Clinic is a medical partnership that has been operating in Great Falls since 1916. Over the years, the partners in the Clinic have practiced under various partnership agreements. The 2001 and 2004 partnership agreements are pertinent to this case. The 2001 partnership agreement contains the following provision entitled "Covenant Not To Compete":

> Each Partner agrees that he or she will not, for a period of three years following his or her voluntary withdrawal from the Partnership, enter into or engage in the practice of medicine in the county of the principal place of his or her practice and in any contiguous county thereof, directly or indirectly, as owner, sole proprietor, partner, shareholder, member, employee, consultant, or in any other capacity. In the event said Partner violates this covenant such partner shall forfeit the accounts receivable of his or her capital account referred to in Article 6.1(b)ii and all interest whatsoever in the MontanaCare capital account referred to in Article 6.1(b)iii.[1]

The partnership agreement also provides that if a partner leaves the Clinic and is not in full compliance with the partnership agreement or is expelled, he or she suffers the same forfeitures. A dissociating partner is paid, over time, his share of the operational profits, capital contributions to the investment and equipment fund, stock, the actual value of their equity interest in the Clinic, and his interest in other entities in which the Clinic may have participated, regardless of his reason for leaving.

¶9     The 2004 partnership agreement changed the title of the covenant not to compete provision to "Competing After Withdrawal or Retirement." The 2001 and 2004 covenants restricting a departing partner's practice differed only in that a partner

---

[1]  MontanaCare is a subsidiary partnership of the Clinic.

3

choosing to practice in Great Falls and the surrounding area within three years of separation would forfeit his interest in the Great Falls Surgery Center (a new subsidiary), in addition to the forfeitures listed under the 2001 partnership agreement.

¶10 All of the Appellees were parties to either the 2001 or 2004 partnership agreements and all of them were aware of the noncompetition covenants. The record shows that none of the Appellees voiced an objection to the noncompetition covenants during any partnership meetings or at any other time before they left the Clinic.

¶11 Upon their separation from the Clinic, each of the Appellees was asked to sign a separation agreement. Doctors Mungas, Mortenson, Dube, Harrer and Spencer signed such an agreement. The separation agreements signed by these Appellees itemized the amounts paid to them (profits, stock, partnership interest, etc.) and stated,

> Both parties agree that the following amounts represent all remaining interest of [the doctor], his heirs, representatives and assigns, in the Partnership and its assets and that payment of the same as herinafter set forth by the GREAT FALLS CLINIC, LLP to [the doctor] shall fully account to him and them for all amounts owing to or to become owing to him by the GREAT FALLS CLINIC, LLP by reason of his Partnership interest.

¶12 Dr. English separated from the Clinic in September 2004. The Clinic sent him a separation agreement but he refused to sign it. When English notified the Clinic he was leaving the partnership, he requested that his MontanaCare account and accounts receivable be paid to him because, in addition to practicing in Great Falls, he would be practicing outside the geographic area delineated in the noncompetition covenant. The Clinic denied his request. English received a check and a statement of distribution from the Clinic.

4

¶13    Dr. Key did not sign a separation agreement, as well. He received a proposed separation agreement several months after he left the Clinic in November 2005. Key understood the proposed agreement was a statement of what he should anticipate receiving with his separation from the Clinic. He stated in his deposition he did not sign the separation agreement because he believed the forfeiture clause drives doctors out of the community and because doctors who have contributed through earnest hard work should not be penalized financially for a decision that they change their lives and change their practices. Key further expressed dissatisfaction with the Clinic's calculation of the amount he was to receive because, although his day-to-day practice was steady, the accounting of his production fluctuated.

¶14    From the record, it appears that in February 2006, Key received a check from the Clinic accompanied by a letter explaining that the amount of his separation payments had been miscalculated. Key has received and accepted monthly payments of $1,294.48 for his interest in the Clinic.

¶15    In February 2006, the Appellees filed this action and made several claims. However, by the time of the final pretrial conference only two claims remained: (1) the prayer for a declaratory judgment that the portion of the partnership agreements reducing the buyouts for former partners competing in Great Falls was void, and (2) the claim for recovery of the amounts forfeited under the provisions.

¶16    In the District Court, the Appellees asserted that the provision of the partnership agreements reducing payments to them was void as a matter of law because they are prohibited restraints on the ability to practice their profession under § 28-2-703, MCA.

5

They further argued that the forfeiture portion of the partnership agreements are unreasonable because they are arbitrary and the forfeitures are not related to a legitimate business interest, as required by *Dobbins, Deguire & Tucker, P.C. v. Rutherford, MacDonald & Olson*, 218 Mont. 392, 708 P.2d 577 (1985).

¶17    The Clinic responded that the forfeiture provision of the partnership agreements was not void under § 28-2-703, MCA, because the reduction in payments to departing physicians fall within the exception for sale of goodwill, as is provided in § 28-2-704, MCA.  At a hearing on pending motions, the Clinic also argued that Doctors Mungas, Dube, Mortenson, Harrer and Spencer may not recover any additional amounts because they reached an accord with the Clinic which had been satisfied.  The Clinic also argued that the forfeiture provision of the partnership agreements was reasonable as a matter of law and therefore, the claims of the Appellees must be dismissed.

¶18    The District Court determined, as a matter of law, that the Appellees are entitled to recover the amounts they forfeited under the noncompetition covenants because neither exception provided in §§ 28-2-704 and -705, MCA, applied, thus the covenants constituted an unenforceable restraint on trade under § 28-2-703, MCA.  The District Court also held that no waiver existed and the statute of limitations did not apply.  The District Court then calculated the amount owed by the Clinic to the Appellees and entered judgment in their favor for such amounts, plus attorney fees.

## STANDARD OF REVIEW

¶19    We review a district court's rulings on summary judgment de novo, applying the same criteria as the district court under M. R. Civ. P. 56. *Paull v. Park County*, 2009 MT

6

321, ¶ 17, 352 Mont. 465, --- P.3d ---. We review the conclusions of law upon which the district court bases its decision to grant or deny summary judgment to determine if they are correct. *Apple Park, L.L.C. v. Apple Park Condominiums, L.L.C.*, 2008 MT 284, ¶ 12, 345 Mont. 359, 192 P.3d 232.

## DISCUSSION

¶20   *Issue 1:  Did the District Court err in not dismissing the claims of Doctors Mungas, Dube, Mortenson, Harrer and Spencer, because the Clinic's obligations to them have been satisfied?*

¶21   Section 28-2-703, MCA, provides:

> Any contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void.

¶22   The exception to § 28-2-703, MCA, provided in § 28-2-704, MCA, concerning the sale of goodwill is discussed in Issue 3 below.  The exception to § 28-2-703, MCA, provided for in § 28-2-705, MCA, concerning dissolved partnerships, is not applicable as the Clinic partnership has not been dissolved.[2]

¶23   The Clinic, citing § 28-1-1403, MCA, asserts that the five doctors who signed separation agreements—Mungas, Mortenson, Dube,  Harrer and  Spencer—may  not recover further payments.  Section 28-1-1403, MCA, provides:

---

[2]   A limited liability partnership is included in the term "partnership."  Section 35-10-102(5)(b), MCA.  A partnership continues after dissolution until the winding up of its business is completed, at which time the partnership terminates.  Section 35-10-602, MCA.

> Part performance of an obligation, either before or after a breach thereof, when expressly accepted by the creditor in writing in satisfaction or rendered in pursuance of an agreement in writing for that purpose, though without any new consideration, extinguishes the obligation.

If the forfeiture provision of the partnership agreements in question is void under § 28-2-703, MCA, then in law, it is the same thing as if this provision had never existed. *School Dist. No. 1 of Silver Bow Co. v. Driscoll*, 176 Mont. 555, 563-64, 568 P.2d 149, 154 (1977) (citing *Lowery v. Garfield Co.*, 122 Mont. 571, 584, 208 P.2d 478, 485 (1949)). Assuming, *arguendo*, that the forfeiture provision of the partnership agreements never existed, the record is clear that the creditors—Mungas, Mortenson, Dube, Harrer and Spencer—would have been due an amount greater than that paid to them for their partnership interests. However, they expressly accepted payments representing a reduced amount of profits, stock, and partnership interest and signed written separation agreements which clearly state that the payments called for by these agreements constitute the full amount the Clinic is going to pay. Thus, pursuant to § 28-1-1403, MCA, any obligation of the Clinic to pay more to Mungas, Mortenson, Dube, Harrer and Spencer is extinguished. The summary judgment of the District Court in favor of these five Appellees must be reversed and their claims dismissed.

¶24 Because Doctors English and Key did not sign separation agreements, § 28-1-1403, MCA, does not apply to them. The Clinic does not argue that the claims of English and Key are extinguished by an accord and satisfaction or by the provisions of § 28-1-1403, MCA.

8

¶25 *Issue 2: Is the claim of Dr. English barred by the provisions of § 35-10-619(9), MCA, a statute of limitation in Montana's version of the Revised Uniform Partnership Act?*

¶26 Dr. English withdrew from the Clinic on September 17, 2004. Near that time, the Clinic offered to pay the amount due to English under the partnership agreement. The Clinic claims that by the time this action was commenced in February 2006, English's claim was time barred as he did not file a complaint within 120 days of the time the Clinic offered to pay him. The statutes concerning the time within which English was required to bring this action are complicated.

¶27 Section 35-10-409, MCA, provides in pertinent part:

(2) A partner may maintain an action against the partnership or another partner for legal or equitable relief, including an accounting as to partnership business, to enforce:

.  .  .

(b) a right under this chapter, including the partner's:

.  .  .

(ii) right on dissociation to have the partner's interest in the partnership purchased pursuant to 35-10-619 or enforce any other right under 35-10-616 through 35-10-623;

.  .  .

 (3) The accrual of and any time limitation on a right of action for a remedy under this section is governed by other law. A right to an accounting upon a dissolution and winding up does not revive a claim barred by law.

¶28 Section 35-10-618(1), MCA, provides:

If a partner's dissociation results in a dissolution and winding up of the partnership business, 35-10-602, 35-10-609, and 35-10-624 through 35-10-629 apply; otherwise 35-10-619 through 35-10-623 apply.

9

¶29 Section 35-10-619(2) through (8), MCA, direct how a court determines the amount a dissociating partner is paid when, as in this case, his dissociation does not result in the dissolution and winding up of the partnership business. These subsections do not, however, refer to a calculation that is made under a partnership agreement. Then, § 35-10-619(9), MCA, provides:

> A dissociated partner may maintain an action against the partnership, pursuant to 35-10-409(2)(b)(ii), to determine the buyout price of that partner's interest, any offsets under subsection (3), or other terms of the obligation to purchase. The action must be commenced within 120 days after the partnership has tendered payment or an offer to pay or within 1 year after written demand for payment if no payment or offer to pay is tendered. The court shall determine the buyout price of the dissociated partner's interest, any offset due under subsection (3), and accrued interest, and enter judgment for any additional payment or refund. If deferred payment is authorized under subsection (8), the court shall also determine the security for payment and other terms of the obligation to purchase. The court may assess reasonable attorney fees and the fees and expenses of appraisers or other experts for a party to the action, in amounts the court finds equitable, against a party that the court finds acted arbitrarily, vexatiously, or not in good faith. The finding may be based on the partnership's failure to tender payment or an offer to pay or to comply with the requirements of subsection (7).

¶30 As noted above, § 35-10-409(b)(2)(ii), MCA, provides that a dissociating partner, such as English, may maintain an action against a partnership, such as the Clinic, to enforce his right to have his interest in the partnership purchased pursuant to § 35-10-619, MCA. Section 35-10-619, MCA, subparagraphs (2) through (8), provide how the amount due is to be determined by a court. Subsection (9) of § 35-10-619, MCA, states that an action to determine how much is owed must be commenced within 120 days of the time the partnership has tendered payment or an offer to pay. However, it is uncertain whether the 120-day period within which to commence an action contained subsection

(9) includes a case such as this, where the amount due is determined by reference to a partnership agreement, or whether the 120-day limitation only applies where no partnership agreement exists and a court must set the amount of the payment. The uncertainty is compounded by § 35-10-409(3), MCA, that provides the time limitation on a right of action is governed by other law, without stating whether "other law" includes § 35-10-619(9), MCA, or requires a reference to periods of limitation found outside of the Revised Uniform Partnership Act.

¶31    The 120-day period of limitation in § 35-10-619(9), MCA, could logically apply. The Appellees, in essence, bring this action to determine the buyout price of their partnership interest. On the other hand, it is also logical to interpret § 35-10-619(9), MCA, to say that the 120-day limitation period only applies to an action where a court must set a buyout price as provided in § 35-10-619(2) through (8), MCA, without reference to a controlling partnership agreement. It is also logical to interpret § 35-10-409(3), MCA, to provide that the time within which an action must be commenced must be found in law other than § 35-10-619(9), MCA.

¶32    Where a substantial question exists regarding which limiting statute should apply, a district court should, in accordance with public policy, resolve the doubt in favor of a statute containing the longer limitation. *Kearney v. KXLF Communications, Inc.*, 263 Mont. 407, 413, 869 P.2d 772, 775 (1994); *Demarest v. Broadhurst*, 2004 MT 147, ¶ 13, 321 Mont. 470, 92 P.3d 1168. Resolving the doubt about whether the 120-day limitation on bringing this action contained in § 35-10-619(9), MCA, bars English's claim in favor

of a longer period of limitation, we conclude the District Court did not err in holding that the claim of English is not time barred.

¶33    *Issue 3: Did the District Court err in holding that the goodwill exception to the prohibition against contracts restricting the ability to engage in a lawful profession does not apply?*

¶34    Section 28-2-704(1), MCA, provides an exception to the prohibition of restraints on trade:

> One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within the areas provided in subsection (2) so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein.

¶35    The Clinic argues that the forfeiture provision in the partnership agreements constitutes the sale of the goodwill of a business, and therefore fall within § 28-2-704, MCA. However, in interpreting § 28-2-704(1), MCA, this Court has held that a sale is a contract by which, for a pecuniary consideration called a price, one transfers to another an interest in property. Section 30-11-101, MCA; s*ee Western Montana Clinic v. Jacobson*, 169 Mont. 44, 51, 544 P.2d 807, 811 (1976). In this instance, there is no payment or agreement to pay a pecuniary consideration in exchange for the transfer to another of an interest in property. There is no "sale" of property. Section 28-2-704(1), MCA,  the sale of goodwill exception to the prohibition on contracts in restraint of trade, does not apply to the partnership agreements at issue in this case.

12

¶36 *Issue 4: Did the District Court err in concluding that the provision of the Clinic partnership agreements, which provide for forfeiture by a dissociating partner who practices in the Great Falls area, is void as a matter of law?*

¶37 As noted above in ¶ 21, § 28-2-703, MCA, provides that a contract which is determined to unreasonably restrain trade "is to that extent void." Section 28-2-604, MCA, titled "when contract partially void," provides that a contract with several distinct objects of which one is lawful and one is unlawful, the contract is void as to the latter and valid as to the rest. Therefore, the noncompetition covenant in the Clinic partnership agreements would be severable from the remainder of the agreement should a determination be made that it is unlawful.

¶38 In interpreting § 28-2-703, MCA, this Court held in *J.T. Miller Co. v. Madel*, 176 Mont. 49, 55, 575 P.2d 1321, 1324 (1978), that a noncompetition contract which completely barred an insurance salesman from selling insurance in Montana for five years after he left an insurance company was void. Later in *Dobbins,* the Court held that the holding in *Madel* applied only to those cases in which a covenant not to compete is, in effect, an absolute prohibition upon a person's right to engage in his business. *Dobbins*, 218 Mont. at 395-96, 708 P.2d at 579. The restriction at question in *Dobbins* did not bar the dissociating partners from practicing their professions in the vicinity, but rather required that if they did so and represented clients of their former firm within one year of their dissociation, they must pay their former partnership an amount calculated under the agreement. *Dobbins*, 218 Mont. at 396, 708 P.2d at 579. Under those circumstances, the

Court held that the restraint on trade provision of the partnership agreement was not void under § 28-2-703, MCA. *Dobbins*, 218 Mont. at 397, 708 P.2d at 580.

¶39 The *Dobbins* Court concluded that in those instances where a contract contains a restraint on a person's ability to practice their profession, but such restraint is not an absolute prohibition, a factual determination must be made as to whether the covenant not to compete is reasonable. *Dobbins*, 218 Mont. at 396, 708 P.2d at 579. The Court adopted the following three-part rule to be applied in determining whether a covenant is a reasonable restraint under § 28-2-703, MCA: (1) the covenant should be limited in operation either as to time or place; (2) the covenant should be based on some good consideration; and (3) the covenant should afford a reasonable protection for and not impose an unreasonable burden upon the employer, the employee or the public. *Dobbins*, 218 Mont. at 397, 708 P.2d at 580. This interpretation of § 28-2-703, MCA, has been consistently followed. *Access Organics, Inc. v. Hernandez*, 2008 MT 4, ¶¶ 16-27, 341 Mont. 73, 175 P.3d 899; *Montana Mountain Products v. Curl*, 2005 MT 102, ¶¶ 11-17, 327 Mont. 7, 112 P.3d 979; *Daniels v. Thomas, Dean & Hoskins, Inc.*, 246 Mont. 125, 144, 804 P.2d 359, 370-71 (1990); and *State Medical Oxygen and Supply, Inc. v. American Medical Oxygen Co.*, 240 Mont. 70, 74-75, 782 P.2d 1272, 1274-75 (1989).

¶40 In this case, unlike *Madel* and like *Dobbins*, the noncompetition covenant in question is not an absolute prohibition on the right of English and Key to engage in their professions. But because they have chosen to practice in the proscribed area, the partnership agreements provide that they will not be paid as much. Still, they are entitled to receive a substantial amount of money for their partnership interests in the Clinic.

14

Thus, the District Court erred in granting summary judgment in favor of English and Key. The question of whether the covenants not to compete are reasonable must be remanded for trial.

¶41 *Issue 5: Did the District Court err in awarding attorney fees?*

¶42 A district court's underlying decision as to whether legal authority exists to award attorney fees is a conclusion of law which this Court reviews to determine if the district court's interpretation of the law is correct. *Trustees of Indiana Univ. v. Buxbaum*, 2003 MT 97, ¶ 15, 315 Mont. 210, 69 P.3d 663; *Braach v. Graybeal*, 1999 MT 234, ¶ 6, 296 Mont. 138, 988 P.2d 761. A district court's grant or denial of attorney fees is a discretionary ruling which this Court reviews for abuse of discretion. *Buxbaum*, ¶ 15.

¶43 Generally, Montana follows the American Rule that a party in a civil action is not entitled attorney fees absent a specific contractual or statutory provision. *Buxbaum*, ¶ 19. The Clinic partnership agreements do not contain language regarding attorney fees. However, the Appellees prayed for declaratory relief under the Uniform Declaratory Judgments Act, §§ 27-8-101, MCA, *et seq.* In an action for a declaratory judgment, § 27-8-313, MCA, may provide a statutory basis for awarding attorney fees as supplemental relief, if such an award is determined to be necessary and proper. *Martin v. SAIF Corp.*, 2007 MT 234, ¶ 22, 339 Mont. 167, 167 P.3d 916; *Buxbaum*, ¶ 41. This Court has adopted a "tangible parameters" test to determine whether a grant of attorney fees is necessary and proper. *Martin*, ¶ 23. In this case, the District Court awarded attorney fees to the Appellees because it concluded an award of attorney fees is necessary and proper under § 27-8-313, MCA.

¶44 In *Buxbaum*, while the Court determined that § 27-8-313, MCA, may provide a statutory basis for awarding attorney fees, it also recognized that simply because a party filed an action seeking a declaratory judgment it is not automatically presumed that an award of attorney fees is necessary and proper. *Buxbaum*, ¶ 45. If such were the case, an award of fees to the prevailing party would be warranted in every garden variety declaratory judgment action and the American Rule on attorney fees would be eviscerated. This Court has upheld the American Rule in the face of similar concerns. *See Sampson v. National Farmers Union Prop. and Cas. Co.*, 2006 MT 241, ¶¶ 19-22, 333 Mont. 541, 144 P.3d 797; *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 23, 351 Mont. 464, 215 P.3d 649. In both of these instances, the Court rejected claims for an exception to the American Rule that were more compelling than the claims for fees in this case.

¶45 In *United National Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 269, ¶ 38, 352 Mont. 105, 214 P.3d 1260, this Court recently held that implicit in the determination of whether an award of attorney fees is necessary and proper is a threshold question of whether the equities support a grant of attorney fees. Thus, while a district court has the discretion to award attorney fees under § 27-8-313, MCA, such fees are only appropriate if equitable considerations support the award. This determination must be made before a court applies the criteria of the tangible parameters test. *United National*, ¶ 38.

¶46 As stated in their brief on appeal, the Appellees acknowledge they brought this action to recover amounts withheld by the Clinic under a portion of a contract that they

allege is void. The true purpose of this action is to secure a judgment for money. The partnership agreements were entered into by relatively sophisticated, well-educated, well-informed physicians who dealt with each other on an equal footing. In this case, we have similarly situated parties disputing whether a contract provision is void. In applying equitable considerations to the facts of this case, the Court concludes that the equities do not support an award of attorney fees. Because this threshold requirement is not met, we do not reach an analysis of the tangible parameters test. Upon remand, no party may recover attorney fees.

## CONCLUSION

¶47 The summary judgment in favor of Doctors Mungas, Mortenson, Dube, Harrer and Spencer is reversed and upon remand the District Court is directed to dismiss those claims. The summary judgment in favor of Doctors English and Key is reversed and their claims are remanded for trial. Upon trial, no party shall be entitled to attorney fees under § 27-8-313, MCA.

/S/ JOHN WARNER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS

17